UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 2:18-cr-122-JDL |
| ) | |
| MAURICE DIGGINS, and ) | |
| DUSTY LEO, ) | |
| Defendants. ) | |
| ) | |

**GOVERNMENT'S MOTION *IN LIMINE* TO PROHIBIT DEFENDANTS FROM INTRODUCING IRRELEVANT, IMMATERIAL, AND UNFAIRLY PREJUDICIAL EVIDENCE OFFERED FOR THE PURPOSE OF JURY NULLIFICATION**

The United States of America, by and through the undersigned counsel, respectfully files the following motion *in limine* to prohibit the defendants, two men charged with conspiring to commit hate crimes over the course of an evening, from introducing any irrelevant, immaterial, and unfairly prejudicial evidence offered for the purpose of jury nullification. The government offers this motion in anticipation of issues that frequently arise in civil rights cases similar to the matter presently before the Court. Based on the government's past experiences in comparable cases, as well as on the facts underlying this specific matter and on statements made by one of the defendants, the government anticipates that the defendants may seek to introduce testimony and argument aimed at (i) suggesting that prosecution of this case is politically motivated; (ii) attacking the propriety of federal hate crime laws; and/or (iii) referencing isolated but high profile incidents to imply that victims of hate crimes are generally untrustworthy (hereinafter, collectively referred to as "the defendants' potential nullification evidence").

As a general matter, defendants in federal hate crime trials often attempt to offer evidence of this sort, the effect of which is to encourage jury nullification. In this specific case, at least one of the defendants has made statements in keeping with the potential nullification evidence.

Consequently, the government seeks this ruling prior to the start of trial because any reference to the defendants' potential nullification evidence—even if just during *voir dire* or opening—could result in prejudice that the Court would be unable to rectify simply by sustaining a timely objection from the government.

As described below, the defendants' potential nullification evidence is irrelevant and immaterial to the charged conduct. Moreover, even if the evidence had some minimal probative value, its admission should be barred by Fed. R. Evid. 403 because the risk of undue prejudice is great. Therefore, pursuant to longstanding precedent and practice, the Court should preclude admission of this evidence or argument as it would serve no purpose other than to improperly encourage jurors to set aside the Court's instructions and decide the case on an impermissible basis.

## I.     RELEVANT BACKGROUND

Defendant Maurice Diggins is Defendant Dusty Leo's uncle. During the evening of Saturday, April 14, 2018, Defendants Diggins and Leo visited multiple bars in the Old Port area of Portland, Maine. As the Old Port bars began to close in the early morning hours of Sunday, April 15, the defendants approached the Silver House Tavern on Commercial Street. At the time, A.N., a black man, was standing outside of the Silver House Tavern with two other black men. Without provocation, the defendants approached the three black men and assaulted them while calling the men "niggers." When the bouncer of the Silver House Tavern exited the bar to see what was happening outside, the defendants fled to their truck, which was parked nearby. Once in their truck, the defendants drove to Biddeford, Maine, where they both lived at the time.

Shortly after arriving in Biddeford, the defendants drove into a local 7-Eleven parking lot. In the parking lot, they spotted another black man, D.M., as D.M. was walking towards the

entrance to the 7-Eleven.  As the truck came to a stop in the parking lot, Defendant Diggins, who was driving, shouted at D.M., "who you eyeballing, Nigger?"  Defendant Diggins then got out of the truck and approached D.M. while repeating the comment.  As Defendant Diggins confronted D.M., Defendant Leo got out of the truck's passenger seat, walked up behind D.M., and struck D.M. forcefully in the head.  After being struck, D.M. ran out of the 7-Eleven parking lot while Defendant Leo followed him on foot.  Once D.M. exited the parking lot, the defendants returned to their truck, got in the vehicle, and began driving after D.M.  As they drove, the defendants shouted words to effect of "Where you at, Nigger?"

After these incidents, both A.N. and D.M. were taken to the hospital because of the injuries they sustained as a result of the defendants' attacks.  At the hospital, doctors determined that both A.N. and D.M. had broken jaws.  The two victims underwent emergency surgery later that day.

Following a federal investigation of these incidents, a grand jury charged the defendants in a three-count Superseding Indictment with conspiring to commit two separate hate crimes, in violation of 18 U.S.C. § 371, and with committing both hate crimes, in violation of 18 U.S.C. § 249(a)(1).  After the defendants' arrest in August 2018, Defendant Leo was released on bail, but Defendant Diggins was detained pending trial.[1]

In light of Defendant Diggins's pre-trial detention, the government has had access to non-privileged jail calls he has made since his arrest.  Unsurprisingly, many of those phone calls include conversations about the charges in this matter.  Of relevance to this motion, Defendant Diggins has, on multiple occasions, made statements in keeping with the potential nullification evidence described above.  For example, Defendant Diggins has stated that he was only charged with a federal hate crime because of the political aspirations of former Maine Attorney General and

---

[1] The defendants were initially arrested pursuant to a two-count indictment that did not address the assault on A.N.  *See* Doc. 3.

current Governor Janet Mills.  He has likewise attacked the propriety of federal hate crime laws, stating, among other things, that "back in the day [. . .] you could just fistfight and nobody wanted to make it a black or white thing."

Defendant Diggins has likewise mentioned what he perceives as parallels between this matter and a high profile case that garnered significant public attention earlier this year.  In February, a nationwide scandal erupted after actor Jussie Smollett allegedly sought to gain further notoriety by staging a hate crime in which he was the victim.[2]  When news of the Smollett incident broke, Defendant Diggins and his wife discussed the Smollett allegations and suggested the incident demonstrates the likelihood that the victims in this matter are also fabricating their allegations.

II.     SPECIFIC EVIDENCE TO BE EXCLUDED

As noted above, the defendants' potential nullification evidence may include testimony and argument aimed at (i) suggesting that prosecution of this case is politically motivated; (ii) attacking the propriety of federal hate crime laws; and/or (iii) referencing isolated but high profile incidents to imply that victims of hate crimes are generally untrustworthy.

As for the first category, the defendants may seek to suggest to the jury that hate crimes often receive significant public attention, and therefore prosecution of this matter under federal hate crimes statutes is politically motivated.  For example, the defendants may note that Maine does not have a comparable state hate crime statute, and thus local politicians invited federal prosecution in order to increase media attention on the matter in an effort to promote their own

---

[2] *See, e.g.*, Megan Crepeau, Jason Meisner, & Jeremy Gorner, *Judge Scolds Jussie Smollett over allegations he staged racist, anti-gay attack: 'Vile and Despicable*, CHICAGO TRIBUNE, Feb. 21, 2019, *available at* https://www.chicagotribune.com/news/breaking/ct-met-jussie-smollet-arrest-20190221-story.html

4

political careers. Such a claim is entirely inappropriate where, as here, there is no good faith basis for a claim of vindictive prosecution.

As for the second category, the defendants may seek to make the political argument that bias-motivated assaults should not be treated differently than assaults that lack an element of bias. The defendants may also seek to argue that the federal government should not play a role in addressing intra-state activity, and that only local law enforcement officials should prosecute assaults that occur entirely within state boarders. Such policy matters are not relevant to the jury's task in determining liability.

As for the third category, the defendants may seek to refer to the Smollett incident described above. In doing so, the defendants may try to imply to the jury that if a known celebrity faked a hate crime to gain more media attention, then the same could be true for the victims in this case. Any such baseless implication would be highly improper.

### III. ARGUMENT

The defendants' potential nullification evidence does not address any actual elements of the charges the defendants face, and would serve only to inappropriately distract the jury from following the Court's instructions. Accordingly, the evidence is irrelevant, immaterial, and unduly prejudicial, and should be excluded.

#### a. The Defendants' Potential Nullification Evidence is Irrelevant

None of the three categories of the defendants' potential nullification evidence has any bearing on whether the defendants committed the acts charged in the Superseding Indictment, and such evidence is thus inadmissible because it is irrelevant. Evidence is relevant if it has any "'tendency to make' the existence of any fact that is of consequence to the determination of the action 'more or less probable then it would be without the evidence.'" *See, e.g., In re PHC, Inc.*

*S'holder Litig.*, 894 F.3d 419, 439 (1st Cir. 2018), *cert denied* 139 S. Ct. 489 (2018) (citing Fed. R. Evid. 401). Whether a fact is "of consequence," and therefore relevant, is "determined 'in light of the underlying substantive law.'" *See Franchina v. City of Providence*, 881 F.3d 32, 49 (1st Cir. 2018) (citing *Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72, 76 (1st Cir. 2010) ("Relevancy is not assessed in a vacuum—it is gauged 'in light of the underlying substantive law.'") (additional citations omitted)). Irrelevant evidence is inadmissible. *See* Fed. R. Evid. 402.

The defendants are charged with twice violating 18 U.S.C. § 249(a)(1). To prove that the defendants violated this law, the jury must find beyond a reasonable doubt that the defendants acted willfully to cause bodily injury to A.N. (for Count Two) and D.M. (for Count Three) because of the victims' actual or perceived race. *See* 18 U.S.C. § 249(a)(1).[3] No part of the defendants' potential nullification evidence is "of consequence" to this determination. *See Franchina*, 881 F.3d at 49. The defendants' potential nullification evidence is thus immaterial as a matter of law and should be excluded under the rules of evidence.

### b. The Defendants' Potential Nullification Evidence is Unduly Prejudicial

Even if the defendants' potential nullification evidence had some minimal probative value (which it does not), it would still be unduly prejudicial because it would inflame the passion of the jury and suggest that jurors should ignore the law and vote instead on an improper emotional basis.

Even relevant evidence may be excluded if its probative value is substantially outweighed by a danger of, among other things, unfair prejudice, confusing the issues, or misleading the jury.

---

[3] The defendants are charged in Count One with conspiring to commit hate crimes, in violation of 18 U.S.C. § 371. The Superseding Indictment also charges each defendant with violating 18 U.S.C. § 2 by aiding and abetting the other in committing the § 249 violations. Because the defendants are most likely to use the potential nullification evidence in defense of the two substantive hate crime charges, this motion focuses on § 249. However, the defendants' potential nullification evidence is also irrelevant and immaterial to any analysis of their guilt with respect to the § 371 and § 2 violations charged in the indictment.

*See* Fed. R. Evid. 403. As the First Circuit has pointed out, Rule 403's reference to the term "unfair prejudice" usually refers to "evidence that invites the jury to render a verdict on an improper emotional basis." *See United States v. Varoudakis*, 233 F.3d 113, 122 (1st Cir. 2000); *see also* Fed. R. Evid. 403 advisory committee notes ("'Unfair Prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one").

The defendant's potential nullification evidence would encourage jurors to act in direct conflict with the stated goals of the Federal Rules of Evidence because such evidence would serve only one purpose: to inflame the jury's emotions. Arguing that prosecution of this case is politically motivated or attacking the propriety of federal hate crime laws would suggest to the jurors that they should decide the case based on political views, rather than on the basis of the substantive law governing this action. Mention of the Smollett incident (or similar occurrences) would create a sensationalized and emotionally charged mini-trial focused on whether or not hate crime allegations have been substantiated in unrelated incidents. Admission of this sort of evidence would thus substantially risk unfair prejudice and confusion, and would likely mislead the jury by unjustifiably distracting it from the actual elements of the charged conduct. In order to avoid such a result, and in order to adhere to the tenets and principles of the Federal Rules of Evidence, the Court should not allow such evidence.

    **c. The Court Must Guard Against the Defendants' Potential Nullification Evidence**

Because the defendants' potential nullification evidence would be specifically and solely aimed at stirring the jurors' emotions in a manner that is unrelated to the governing law, its admission would also encourage the jurors to violate their oaths. Pursuant to longstanding

precedent and practice, the Court must guard against such an outcome when it is in the Court's power to do so.

The First Circuit has sternly disapproved of nullification. Specifically, "[t]he First Circuit Court of Appeals has held that if defense counsel chooses to encourage jurors to nullify the law, the Court shall step in and 'block defense attorneys' attempts to serenade a jury with the siren song of nullification.'" *United States v. Diaz*, 820 F.Supp.2d 301, 305-06 (D.P.R. 2011) (citing *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993)).

In doing so, the First Circuit, like many other circuits, has noted that courts should not encourage nullification since nullification is a dereliction of jurors' sworn duty to "apply the law as given to them by the court." *See Sepulveda*, 15 F.3d at 1190 (citing *United States v. Boardman*, 419 F.2d 110, 116 (1st Cir. 1969)). *See also United States v. Trujillo*, 714 F.2d 102, 105-06 (11th Cir. 1983) ("[N]either the court nor counsel should encourage jurors to violate their oath.") (citing *United States v. Dougherty*, 473 F.2d 1113, 1130-37 (D.C. Cir. 1972)); *United States v. Moylan*, 417 F.2d 1002, 1005-09 (4th Cir. 1969) ("Public and private safety alike would be in peril if the principle be established that juries in criminal cases may, of right, disregard the law as expounded to them by the court, and become a law unto themselves.").

Because of the dangers associated with nullification, the First Circuit has joined several other circuits in holding that defendants have no right to nullification. *Sepulveda*, 15 F.3d at 1190. *See also Crease v. McKune*, 189 F.3d 1188, 1194 (10th Cir. 1999); *United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997) ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable *or that courts may permit it to occur when it is within their authority to prevent it*.") (emphasis added); *United States v. Powell*, 955 F.2d 1206, 1213 (9th Cir. 1992). This District has wisely adhered to this principle by also noting that defendants

are not entitled to urge nullification.  *See United States v. Friel*, No. Cr. 06-25, 2006 WL 1877023, at *1 (D. Me. July 6, 2006) (noting that defendants "cannot ask the jury to nullify the law") (citing *United States v. Alston,* 112 F.3d 32, 36 (1st Cir.1997); *Scarpa v. DuBois,* 38 F.3d 1, 11 (1st Cir.1994)).  *See also United States v. Ahrendt*, No. CR-04-43, 2005 WL 2253826, at 3 (D. Me. Sept. 16, 2005) (defendant not entitled to promote jury nullification) (citing First Circuit cases).

Admission of the defendants' potential nullification evidence would invite the jury to violate its duty.  As discussed above, the First Circuit has instructed trial courts to guard against such a violation by taking steps to limit the possibility of nullification.  To do so here, the Court should exclude the defendants' potential nullification evidence.

## IV.     CONCLUSION

For the reasons given above, the government respectfully requests that the Court bar the defendants from presenting irrelevant, immaterial, and unfairly prejudicial evidence for the purpose of encouraging jury nullification.

Respectfully submitted,

| | |
|---|---|
| HALSEY B. FRANK<br>UNITED STATES ATTORNEY | ERIC S. DREIBAND<br>ASSISTANT ATTORNEY GENERAL<br>CIVIL RIGHTS DIVISION |
| */s/ Sheila W. Sawyer*<br>SHEILA W. SAWYER<br>Assistant United States Attorney<br>100 Middle Street<br>Portland, Maine 04101<br>207-780-3257<br>sheila.sawyer@usdoj.gov | By:   */s/ Timothy Visser*<br>TIMOTHY VISSER<br>Trial Attorney<br>U.S. Department of Justice<br>Civil Rights Division, Criminal Section<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530<br>202-353-8175<br>timothy.visser@usdoj.gov |

## CERTIFICATE OF SERVICE

July 19, 2019

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                              */s/ Timothy Visser*
                              Timothy Visser
                              Trial Attorney
                              U.S. Department of Justice