UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | DOCKET NO. 2:18-cr-122-JDL |
| | ) | |
| MAURICE DIGGINS | ) | |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM ON MEDICALLY ASSISTED TREATMENT DURING PRETRIAL DETENTION**

**Summary**

Pending before the court is Maurice Diggins' Emergency Motion to Restore Medication During Pretrial Detention. ECF # 123. A hearing is scheduled for January 14, 2020 at 3 p.m. Diggins is in pre-trial custody of the U.S. Marshal. He is being housed at the Strafford, NH jail. Diggins was consistently provided prescription suboxone until recently when the jail stopped treatment. Lacking his long standing medication, Diggins is suffering from withdrawal, is sick and is unable to concentrate and prepare for trial which is specially assigned for March 2 jury selection.

**Background**

The pre-trial services (bail) report documents Diggins "has been on prescription Subutex[1] since 2015, taking approximately twenty milligrams daily." ECF 30, p. 4. Diggins

---

[1] Subutex is a brand name for buprenorphine. Subutex is generally prescribed for only a few days as part of the initial course of treatment, Patients are generally transitioned to suboxone which contains a combination of buprenorphine and noloxone. "SUBUTEX does not contain naloxone and is preferred for use only during induction. Following induction, SUBOXONE sublingual film or SUBOXONE sublingual tablet is preferred due to the presence of naloxone when clinical use includes unsupervised administration." "Buprenorphine is sold under the brand name of Subutex and, in

has been prescribed subutex or suboxon as part of his medically assisted treatment (MAT) for opiate addiction. Diggins has previous been diagnosed with depression, seasonal affective disorder, and severe anxiety. Id. p. 3. He has a history of multiple suicide attempts while in state custody. Id. Since entering jail on pre-trial detention Diggins has been receiving his medication. In late December the Strafford Jail stopped Diggins' medication. We asked the Marshals to inquire and the jail told the Marshal, Diggins what "non-compliant." We have no written explanation from the jail. Diggins disputes any alleged noncompliance and asserts he took his prescribed medication regularly. Lack of the medication has made him sick and unable to focus.

**This Court has Ruled on the Importance of Medically Assisted Treatment**

Jails and prisons around the country provide inmates with medically assisted treatment for opioid dependance. Suboxone is the most common medication provided. Judge Torresen, following testimony and exhibits, issued a preliminary injunction requiring the Aroostook County jail to continue MAT treatment during a period of incarceration in the Maine state system. *Smith v. Aroostook County*, 18-cv-352, ECF # 116. The injunction was affirmed by the First Circuit. ECF # 144. See the plaintiff's expert affidavits submitted to the court in Smith. Attached exhibits 1, 2, 3.

Exhibit 1 is the affidavit of Dr. Ross MacDonald who was the Chief Medical Officer

---

combination with naloxone, as Suboxone. Subutex is intended for use at the beginning of treatment while Suboxone is intended for the maintenance treatment of opiate addiction."
https://www.rxlist.com/subutex-drug.htm#indications;
https://www.rxlist.com/script/main/art.asp?articlekey=38304
Naloxone belongs to a class of drugs known as opioid antagonists. It works by blocking the effects of the opioid in the brain.  Buprenorphine is a synthetic opiate and addictive. Combining buprenorphine with naloxone limits the brain receptors for the opiate and assists in combating opiate cravings and relapse.
https://www.drugs.com/monograph/buprenorphine-buprenorphine-hydrochloride.html#r1

and Senior Assistant Vice President for the Division of Correctional Health Services at New York City Health + Hospitals, the largest public health care system in the United States. He was responsible for the healthcare of more than 8,000 people incarcerated in NYC jails and about 50,000 annual jail admissions. The opioid treatment program in New York City jails provides medication-assisted treatment—also referred to as agonist medication—to prisoners with opioid use disorder. He has overseen the opioid treatment program at the Rikers Island jail in New York City since 2013 and is himself a licensed buprenorphine provider. He avers:

> Based upon my experience in implementing medication-assisted treatment programs in a correctional setting, as well as collaboration with medical leadership of jails and prisons around the country, security concerns such as drug trafficking and diversion are not sufficient barriers to treatment. Rather, there are numerous effective methods to reduce the risks of diversion, and providing treatment for opioid use disorder may, if anything, help ameliorate the underlying cravings that underlie drug trafficking in jails. ¶7.

> Withholding medication from someone with OUD generally triggers symptoms of withdrawal and increases risk for relapse into active OUD. Both withdrawal and relapse are serious and potentially dangerous medical conditions. ¶ 9.

> There is significant suffering associated with withdrawal. Symptoms of withdrawal include muscle pain, vomiting, diarrhea, depression, insomnia and anxiety. Even if the patient is not actively vomiting or otherwise exhibiting obvious symptoms, he or she could still be in serious pain from withdrawal and experiencing other damaging psychological symptoms. These symptoms are exacerbated by co-occurring disorders such as depression, anxiety and post-traumatic stress disorder (PTSD), which are common among patients with

3

>OUD.¶ 10 (internal citation omitted). Withdrawal symptoms can last up to several weeks, and after withdrawal, patients with OUD do not return to their pre-OUD baseline, often experiencing symptoms of OUD such as cravings, which can continue indefinitely. ¶ 11. Relapse into active OUD is a potentially life-threatening condition, and can result in overdose and death, either during incarceration or after release. ¶12.

Dr. Fellers, a psychiatrist, Director of Integrated Medication-Assisted-Treatment at the Maine Medical Center in Portland, Maine and board certified in Addiction Psychiatry and Psychiatry also submitted an affidavit. Exhibit 2.

>Opioid use disorder is a chronic brain disease that some people can get from taking opioids often, and is sometimes referred to as opioid dependence or opioid addiction. This type of disease leads to craving opioids, not being able to stop using opioids, and can cause major life problems. Signs of opioid use disorder can include craving, increasing tolerance to opioids, withdrawal symptoms, and a loss of control. Exhibit 2, ¶ 3.

>Opioid use disorder also changes the circuitry in the brain for regulating arousing and psychological stress. Specifically, the cycle of addiction, including withdrawal, leads to hyperactivity locus coereleus noradrenergic system that regulates arousal and psychological stress. ¶¶ 7, 8 (see diagrams in exhibit.)

>Medication-assisted treatment is the standard of care for opioid use disorder. ¶11.

Edmond Hayes, affiant of exhibit 3, is a corrections expert and Superintendent at the Franklin County Sheriff's Office in Greenfield, Massachusetts. In that role, I am the Director of Treatment and Programming, which incorporates supervision and administration of the medication-assisted treatment program in the Franklin County House of Correction and Jail. The opioid treatment program in Franklin County jails provides medication-assisted treatment to inmates with opioid use disorder. Franklin County jail's treatment program is recognized as a demonstration site by the United States Substance Abuse and Mental Health Services Administration ("SAMHSA") and the National Reentry Resource Center. ¶ 3. Based on his experience overseeing the administration and implementation of a medication-assisted treatment program in the Franklin County jail, agonist medication can be safely and effectively administered in the correctional setting. ¶ 5. In his opinion, the risk of diversion does not justify withholding MAT in jails and prisons because there are many different ways to reduce the risk of diversion. ¶ 8 (He attached a Dispensing Protocol to the affidavit). He also lists multiple steps jails can take to avoid mediation misuse. This can be as simple as "Instructing the inmates to sit on their hands for the duration of the medication distribution." ¶10 (which provides the full list).

The plaintiff in Smith was receiving twice-daily dose of buprenorphine as part of a medication-assisted treatment ("MAT") program for her opioid use disorder. She was sentenced to 40 days in the Aroostook County jail and was told she would not be administered her medication while incarcerated triggering the civil suit.

Here Diggins is pre-trial and has been receiving medication at the Strafford jail. The same medication he has been prescribed for over four years. The jail did not "taper" the dosage. Rather, the jail unilaterally stopped the medication completely. Diggins is now sick, suffering withdraw, and unable to prepare for a specially assigned trial. Ms. Smith was in execution of sentence and Judge Torresen ordered the jail to provide "her prescribed

buprenorphine during her sentence at the Aroostook County Jail in whatever way the Defendants deem most appropriate in light of the Aroostook County Jail's security needs. Id. ECF 116, p. 28. Mr. Diggins has not been convicted. He is entitled to at least the same measure of treatment as a convicted defendant.

**Conclusion**

We ask the court to apply the reasoning and outcome crafted by Judge Torresen and order that the Strafford County Jail (Jail) (or other location of detention chosen by the Marshals) provide Diggins' prescribed buprenorphine during his confinement at the Jail in whatever way the Jail finds most appropriate in light of the Jail's security needs.

DATE: January 13, 2020                     /s/ *David Beneman*
                                            David Beneman
                                            Attorney for Maurice Diggins

David Beneman
Federal Defender
P.O. Box 595
Portland, Me 0412-0595
207-553-7070 ext. 101
David_Beneman@fd.org

**CERTIFICATE OF SERVICE**

I, **David Beneman**, attorney for **Maurice Diggins**, hereby certify that I have served, electronically, a copy of the **within "DEFENDANT'S SUPPLEMENTAL MEMORANDUM ON MEDICALLY ASSISTED TREATMENT DURING PRETRIAL DETENTION"** upon **Sheila Sawyer**, Assistant United States Attorney, United States Attorney's Office, Portland, ME, **Amy Fairfield**, Esq. and all other counsel of record via the ECF system.

                                            /s/ David Beneman
                                            David Beneman

DATE: January 13, 2020