# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:18-cr-00122-JDL-001 |
| | ) | |
| MAURICE DIGGINS, | ) | |
| | ) | |
|     Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION IN LIMINE**

Maurice Diggins is charged in a Superseding Indictment (ECF No. 58) with two counts of committing racially motivated assault in violation of 18 U.S.C.A. § 249(a)(1) (West 2020) and one count of conspiring to commit racially motivated assault in violation of 18 U.S.C.A. § 371 (West 2020) and § 249(a)(1). Diggins moves in limine to exclude certain evidence from trial (ECF No. 165). For the reasons explained below, I deny Diggins' motion.

## I. DISCUSSION

Diggins' motion seeks to preclude the Government from referring to his tattoos during its opening statement or introducing evidence of the same during its case-in-chief, arguing that the admission of such evidence violates Fed. R. Evid. 401 and 403, as well as the Fifth Amendment to the United States Constitution. The motion also seeks to preclude the Government's expert witness, Christopher Magyarics, from opining on the racial meaning of Diggins' tattoos at trial, citing Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). I address each argument in turn.

A.  **Tattoo Evidence**

The parties' joint submission of exhibits (ECF No. 176) includes photographs of several tattoos on Diggins' body, which the parties agree were taken upon Diggins' arrest in this case as part of the booking process. The photographs indicate that Diggins has, among other tattoos: (1) tattoos on his forearms of swastikas, symbols known as "SS bolts," and the phrase "Dirty White Boy"; (2) a tattoo on his inner bicep of a bottle, which is labeled "Absolute Pride" and contains the sentence, "We must secure the existence of our people and a future for white children"; and (3) a tattoo on his thigh depicting a pitbull with the words "Tuff Love" above and below it.

Diggins asserts that the evidence of the tattoos is irrelevant and therefore inadmissible because he was not displaying his tattoos during the alleged assaults. Evidence is relevant if (1) "it has any tendency to make a fact more or less probable than it would be without the evidence," and (2) "the fact is of consequence to the action." Fed. R. Evid. 401. Here, the evidence that Diggins has several potentially racially charged tattoos tends to show that Diggins holds racist beliefs, which is relevant to determining an essential element of the crime charged—namely, whether he acted because of racial animus on the night of the alleged assaults. Thus, the tattoo evidence is relevant. The fact that Diggins was not displaying his tattoos during the alleged assaults goes to the meaning and weight the jury should afford the tattoo evidence, not its relevance.

Diggins further asserts that, even if the tattoo evidence is relevant, it is inadmissible under Fed. R. Evid. 403, which provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one

or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Here, there is no undue delay or unfair surprise, as Diggins had ample advance notice of the Government's knowledge of and intention to introduce the tattoo evidence. And while the tattoo evidence may be prejudicial to Diggins, the question is whether the risk of *unfair* prejudice substantially outweighs the probative value of the evidence. I conclude that it does not. As I have already explained, the evidence is significantly probative of Diggins' motive, intent, or plan in carrying out the alleged assaults, and it may be considered for those purposes. Any risk that the jury might be unduly inflamed by what the tattoos depict can be ameliorated by a limiting instruction explaining that the evidence may be considered only to evaluate Diggins' motive, intent, or plan.

Finally, Diggins argues that admitting the tattoo evidence would violate his Fifth Amendment privilege against self-incrimination. The Fifth Amendment provides: "No person shall . . . be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. "To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." *United States v. Monteiro*, 871 F.3d 99, 108 (1st Cir. 2017) (citing *Hiibel v. Sixth Jud. Dist. Ct.*, 542 U.S. 177, 189 (2004)).

There is no question that the content of Diggins' tattoos does not qualify for the Fifth Amendment privilege, because there is no evidence that the Government compelled Diggins to get the tattoos. Diggins asserts, however, that the tattoo evidence should be excluded because the photographs themselves were compelled. I

look to the Supreme Court's guidance in *Fisher v. United States*, 425 U.S. 391 (1976), *United States v. Doe*, 465 U.S. 605 (1984), and *United States v. Hubbell*, 530 U.S. 27 (2000). Based on these decisions, there is no Fifth Amendment violation in admitting photographs of a defendant's tattoos if the Government demonstrates that it had prior knowledge of the tattoos and could independently prove their existence.

Accordingly, the Government may lay a foundation for the admission of the tattoo evidence at trial in one of two ways. First, the Government may establish that some or all of Diggins' tattoos are openly visible, i.e., that they were in plain view when Diggins was questioned or arrested or are in plain view when Diggins wears state-issued clothing in pretrial detention. In the alternative, the Government may establish that it otherwise discovered Diggins' tattoos prior to taking the challenged photographs and would be able to prove the existence of each tattoo without relying on the same. Based on the Government's representation in its opposition to Diggins' motion that it had independent knowledge of Diggins' tattoos prior to taking the challenged photographs, I conclude that the tattoo evidence is likely admissible, and I deny Diggins' motion in limine as to that evidence.

**B.     Testimony of Tattoo Expert**

Diggins also moves to exclude the testimony of the Government's expert witness, Christopher Magyarics, who will opine on the racial meaning of Diggins' tattoos. According to his resume, which is included in the parties' joint submission of exhibits, Magyarics is a Senior Investigative Researcher at the Anti-Defamation League's Center on Extremism. His resume represents that he has spent over fifteen years researching white supremacist symbolism, including going undercover as a

4

member of several white supremacist organizations. His resume also represents that he has trained thousands of law enforcement officials on how to identify white supremacist threats and served as an expert consultant to law enforcement agencies on interpreting tattoos and numeric symbols. Magyarics' expert report, which is also included in the joint submission of exhibits, offers general information about the history of the words and symbols contained in certain of Diggins' tattoos, as well as their contemporary meaning among various white supremacist organizations.

Diggins first challenges this evidence under Fed. R. Evid. 702, arguing that it is not helpful to the jury and therefore an improper subject of expert testimony. However, because it is unlikely that the jury would understand the significance of at least some of Diggins' tattoos, including the SS bolts and the "Dirty White Boy" tattoo, I conclude that Magyarics' testimony is the subject of specialized knowledge and could be helpful to the jury.

Diggins further asserts that this evidence is not sufficiently scientific and should be excluded under the standards for reliability set forth in *Daubert*. However, the fact that Magyarics' testimony is not scientific does not make it inadmissible. To the contrary, "[e]xperts may testify on the basis of experience." *Brown v. Wal-Mart Stores, Inc.,* 402 F. Supp. 2d 303, 308 (D. Me. 2005). The Government will have the opportunity to lay a foundation for Magyarics' expertise when it seeks to qualify him as an expert at trial. At that time, the Government will also have the opportunity to lay a foundation for the reliability of Magyarics' opinion. "[I]f the [expert] witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis

for the opinion, and how that experience is reliably applied to the facts." *Id.* (citing Fed. R. Evid. 702 advisory committee's note). Because I conclude, based on the Government's representations, that Magyarics' expert testimony is likely admissible, I deny the motion in limine as to this evidence as well.

## II. CONCLUSION

For the reasons explained above, it is **ORDERED** that Diggins' motion in limine (ECF No. 165) is **DENIED**.

**SO ORDERED.**

Dated: March 5, 2020

                                              **/s/ JON D. LEVY**
                                      **CHIEF U.S. DISTRICT JUDGE**