UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 2:18-cr-00122-01-NT |
| | ) | |
| MAURICE DIGGINS | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR RELEASE ON CONDITIONS PENDING SENTENCING**

Defendant Maurice Diggins seeks release from custody pending sentencing in light of the COVID-19 crisis. *See* Defendant's Motion for Release on Conditions Pending Sentencing and Supporting Memorandum (ECF No. 220) ("Motion"). The Court should deny the defendant's motion without a hearing because the defendant does not satisfy the conditions for release pending sentencing as dictated by 18 U.S.C. §§ 3143 and 3145(c).

**PROCEDURAL AND FACTUAL BACKGROUND**

On August 23, 2018, a federal grand jury returned a two-count indictment against defendant Maurice Diggins and his nephew, Dusty Leo. *See generally* ECF No. 3. The indictment charged the defendants with conspiring to commit a hate crime, in violation of 18 U.S.C. § 371, and with committing a hate crime, in violation of 18 U.S.C. § 249. The charges stemmed from the defendants' vicious and unprovoked assault of a black man, D.M., in a 7-Eleven parking lot in Biddeford, Maine, during the early morning hours of Sunday, April 15, 2018.

After the defendants were charged in August 2018, federal investigators learned that the defendants committed other racially-motivated assaults in the Old Port section of Portland, Maine, on the same evening as the Biddeford attack. The FBI continued its investigation, and on March 1, 2019, a federal grand jury returned a three-count Superseding Indictment against the

1

defendants. *See generally* ECF No. 58. Count Three of the Superseding Indictment re-alleged the hate crime charge regarding the attack on D.M. in Biddeford. Count Two of the Superseding Indictment charged the defendants with an additional § 249 violation for the assault on a second black man, A.N., in Portland. Count One of the Superseding Indictment alleged a conspiracy to commit the hate crimes charged in Counts Two and Three, and added overt acts involving assaults on other men of color that evening, R.D. and K.L.[1]

In addition, local authorities pursued charges against the defendant for the assault of D.M. in Biddeford. Specifically, defendant Maurice Diggins was initially charged in York County with criminal conspiracy and interference with constitutional rights. He was arrested on those state charges on April 25, 2018, and held without bail until June 1, 2018, when he was released on conditions. Because the defendant was on probation for an unrelated case in Cumberland County at the time, the York County charges also raised the prospect that his probation would be revoked in Cumberland County.

The day after the defendant was originally indicted on federal hate crime charges, he was arrested by FBI agents. The defendant's initial appearance in federal court took place on August 27, 2018, at which time he pled not guilty to the charges and was ordered temporarily detained. On September 4, 2018, the defendant appeared before Magistrate Judge Rich and waived his right to a detention hearing. Notably, by that time Cumberland County prosecutors had moved to revoke his probation, and the defendant was therefore also subject to a probation hold based on those pending probation violation charges in Cumberland County. *See* ECF No. 30, at 6. Upon information and belief, that hold remains in effect to this date.

---

[1] Neither R.D. nor K.L. were explicitly noted in the Superseding Indictment by name. However, they were the individuals referenced in paragraphs 2(a)-(b) of the Superseding Indictment.

On March 10, 2020, after a four-day jury trial before this Court, the defendant was found guilty on all counts of the Superseding Indictment. ECF No. 203. The Court thereafter ordered that the defendant remain detained pending sentencing. *See id.*

The defendant now seeks relief in light of the global COVID-19 crisis, and what he claims to be his own medical conditions. He is currently detained in the custody of the United States Marshal at Strafford County Department of Corrections ("Strafford") in Dover, New Hampshire. As of this writing, there have only been two reported cases of COVID-19 at this institution -- one entering inmate and one staff member – neither of whom had any interaction with the current inmate population.

## DEFENDANT DOES NOT SATISFY THE STATUTORY REQUIRMENTS FOR RELEASE PENDING SENTENCE

Having been convicted of two hate crimes and conspiracy to commit those crimes, the defendant now seeks release pending sentencing. However, as discussed below, he is unable to meet the statutory requirements governing his request.

Pursuant to 18 U.S.C. § 3143(a)(2), release is strictly limited at this stage. In pertinent part, that provision provides that detention is mandatory when an individual is awaiting sentencing after being convicted of a "crime of violence." *See* 18 U.S.C. §§ 3143(a)(2) and 3142(f)(1). That directive can only be set aside when:

> (A) (i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and
>
> (B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

*See* 18 U.S.C. § 3143(a)(2).

3

Here, the defendant was convicted of federal hate crimes, which are crimes of violence pursuant to Section 3142(f)(1)(A). *See* 18 U.S.C. § 3156(a)(4)(A) (defining "crime of violence" to include "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another"). *See also United States v. Roof*, 225 F. Supp. 3d 438, 459 (D.S.C. 2016) (noting that 18 U.S.C. § 249 is a "crime of violence"). Thus, the strict mandates of Section 3143(a)(2) apply, and to be eligible for release, the defendant must first show either that (1) there is a substantial likelihood that he will win a motion for acquittal or be granted a new trial, or (2) that the government has recommended a sentence of no prison time. The defendant cannot make either showing.

The defendant moved for a judgment of acquittal at the conclusion of the government's case in chief at trial, and then again at the conclusion of the case. *See* ECF Nos. 199, 201. Both motions were denied. ECF Nos. 200, 202. Therefore, there is no possible avenue for acquittal at this juncture. There is also no dispute that the defendant faces a substantial prison term as a result of his convictions in this case.

The defendant's request for release pending sentencing is also defeated by the second requirement of Section 3143(a)(2) because he has not demonstrated any convincing reason to believe that he is not likely to flee or pose a danger to others or the community. Instead, the defendant only suggests (1) that his conditions of release should include home confinement and electronic monitoring, and that under these conditions, the defendant's release will not pose any danger to the community or risk of flight, and (2) that any risk of flight, which defendant contends was already minimal in this matter, is further reduced by the current pandemic. The defendant also "avers" that he is "not a danger to the safety of any other person or to the community if released" and brushes off any safety concerns based on his "past behavior" by

4

stating simply that he has "given great thought" to that behavior and "engaged in several programs while in custody."[2] However, a review of the defendant's extensive criminal history, his consistent misconduct even while incarcerated, and his actions in this specific case, make it clear that the defendant is a danger to others.

Since 2001, the defendant has spent most of his adult life in jail or prison. He has been convicted of multiple crimes, including crimes of violence – crimes he almost always committed while already on probation or subject to conditions of release. Indeed, the defendant committed the very crimes in this case *while he was on state probation*, and is thus currently facing probation revocation in Cumberland County Court. The defendant is facing over four-and-a-half years' incarceration on that violation, in addition to whatever sentence he receives in the instant case. For these reasons, the government respectfully submits that the defendant does not qualify for release because he continues to be a danger to others and the community, and poses a risk of flight given the substantial terms of incarceration he is facing, both in the federal and state systems.

Perhaps because he is unable to meet the strict requirements of Section 3143(a)(2), in his Motion the defendant does not address the applicable standards governing release pending sentencing in a case such as this one. Instead, he invokes a provision of 18 U.S.C. § 3142(i), which permits the temporary release of a defendant pending trial if there is a "compelling reason" for such release. *See* Motion, at 4.

As a threshold matter, Section 3142(i) does not apply in this case, because the defendant has been adjudicated guilty. Instead, the applicable standards governing release pending

---

[2] Notably, the defendant does not identify the particular "programs" he claims to have participated in while in custody, let alone explain why those programs make him any less a danger to the community than before he undertook them.

*sentencing* are set forth in Section 3143, which, for all the reasons noted above, mandate detention in this case.

It is true that courts in this District have held that a separate provision of Title 18 -- 18 U.S.C. § 3145(c) -- provides a district court with the authority to release a defendant pending imposition of sentence if it is clearly shown that there are "exceptional reasons" why such person's detention would not be appropriate. *See United States v. Farlow,* 824 F. Supp. 2d 189, 193 (D. Me. 2011) (applying § 3145(c) in district court proceeding); *United States v. Cameron*, 756 F. Supp. 2d 148, 151 (D. Me. 2010) (same); *United States v. Kenney*, 2009 WL 5217031, at *1 (D. Me., Dec. 30, 2009) (same). To qualify for release under this provision, however, the defendant must first meet the "conditions of release set forth in section 3143(a)(1) or (b)(1)." 18 U.S.C. § 3145(c). Each provision also requires the defendant to demonstrate by clear and convincing evidence "that [he] is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(a)(1), (b)(1). *United States v. Kenney*, 2009 WL 5217031, at *2. But, as demonstrated above, the defendant is plainly unable to make this showing. Thus, even if "exceptional reasons" militated in favor of triggering the application of Section 3145(c), the defendant still does not qualify for release pursuant to that provision.

### DEFENDANT HAS NOT DEMONSTRATED EXCEPTIONAL REASONS WHY DETENTION IS NOT APPROPRIATE

As noted above, the defendant, in essence, contends that there are compelling reasons to release him due to the Covid-19 pandemic because his general confinement and his specific medical conditions leave him uniquely vulnerable to the effects of Covid-19 infection. However, even if the defendant can establish that his medical conditions place him at higher level of risk from the Covid-19 virus, it is not clear that this alone would render continued detention inappropriate.

First, though there is a risk that the defendant could be exposed to Covid-19 while in custody, the facility housing the defendant has undertaken efforts to mitigate this risk. The defendant is currently in the custody of the United States Marshal Service at Strafford. The government is aware that Strafford staff are actively mitigating the risk of COVID-19 infection, including providing prisoners with soap and 3-ply medical masks, mandating that all staff wear masks, quarantining all new prisoners for 14 days before admission to general population, and providing education, infection-resistant personal protective equipment, health monitoring and paid medical leave for jail staff. Thus far, these mitigation steps appear to be working, as the government is aware that there has been only one case of COVID-19 at the jail involving an inmate, which was suspected upon that inmate's arrival at Strafford on May 14, 2020, and confirmed through testing on May 16, 2020. As a result of being a suspected COVID-19 case, the inmate was immediately placed in a negative pressure cell per Strafford's policy, and had no interaction with the other inmates.[3]

In sum, the defendant has proffered no information that the facility in which he is currently detained is unable to adequately address COVID-19. Indeed, to the contrary, the leadership and staff at Strafford are taking appropriate and, by all accounts, effective steps to mitigate the risk for the inmate population incarcerated there. While it is always possible that the defendant could contract COVID-19 while incarcerated there, the mere possibility of contracting COVID-19 exists for individuals throughout this country, including those in the District of

---

[3] Strafford also recently had one COVID-19 case involving a staff member, who tested positive after the jail conducted a county wide test for all who work for Strafford County. The test was offered, not required, for all staff. Of the 400+ staff members who were tested, only one came back positive. Strafford has initiated the recommended contact tracing and determined that this staff member did not have any contact with any inmates during the requisite timeframe.

Maine.[4]

## CONCLUSION

WHEREFORE, the United States respectfully requests that Defendant's Motion for Release on Conditions Pending Sentencing (ECF No. 220) be denied without a hearing.

Dated: May 19, 2020

Respectfully submitted,

HALSEY B. FRANK
UNITED STATES ATTORNEY

/s/ *Sheila W. Sawyer*
Sheila W. Sawyer
Assistant United States Attorney
100 Middle Street
Portland, Maine 04101
207-780-3257
sheila.sawyer@usdoj.gov

ERIC S. DREIBAND
ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION

By:   /s/ *Timothy Visser*
TIMOTHY VISSER
Trial Attorney
U.S. Department of Justice
Civil Rights Division, Criminal Section
950 Pennsylvania Avenue, NW
Washington, DC 20530
202-353-8175
timothy.visser@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed this document on May 19, 2020, through the ECF system, which will automatically send notice electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

---

[4] Indeed, as part of his proffered release plan, the defendant proposes working full-time for Elite Drywall, which would obviously have him working at a number of construction sites in and around southern Maine. Given the fact that the defendant would not be sheltering in place as the vast majority of Mainers are doing, the defendant's risk for contracting COVID-19 could actually be greater if he were released than if he remained detained pending sentencing.

8

/s/ *Sheila W. Sawyer*
Sheila W. Sawyer
Assistant United States Attorney