UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 2:18-cr-122-NT |
| | ) | |
| MAURICE DIGGINS, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, through the undersigned counsel, respectfully submits this sentencing memorandum to assist the Court with the sentencing of defendant Maurice Diggins, which is scheduled for October 27, 2020. As described below, the government recommends that the Court sentence defendant Diggins to 120-months of imprisonment. Such a guideline sentence is sufficient, but not greater than necessary, to promote the purposes of sentencing as applied to defendant Diggins and his role in committing, and conspiring to commit, a series of hate crimes.

**I.    RELEVANT BACKGROUND**

The facts of this case, which are well known to the Court, regard a series of attacks defendant Diggins and his nephew, co-defendant Dusty Leo, committed over the course of one evening in April 2018.[1]

    **a. Relevant Factual Background**

        ***i. Attack on Akok Nyang and Ryan Doran in the Old Port***

In the early morning hours of April 15, 2018, Akok Nyang, a black Sudanese immigrant, was standing outside of the Silver House Tavern in the Old Port area of Portland. The defendants approached him and, without warning, defendant Diggins slugged Nyang in the jaw. After

---

[1] In addition to the charged hate crimes, at trial the jury also heard evidence regarding two other assaults that were not charged in the Superseding Indictment. Those incidents have been summarized by the Probation Department in its Presentence Investigation Report. *See* Doc. 234 at 14-15.

defendant Diggins struck Nyang, Nyang tried to run away from the defendants. In response, the defendants chased after Nyang while yelling racial epithets at him.

As the defendants chased Nyang down the street, another black man, Ryan Doran, followed the three men to see what was happening. As Doran turned a corner, defendant Diggins struck him in the face, knocking him out cold.

### ii. *Attack on Daimon McCollum in Biddeford*

Following the incident in the Old Port, the defendants and defendant Diggins's wife, Tessa, drove to Biddeford, where they all lived at the time. After dropping Tessa off at home, the defendants drove to a 7-Eleven convenience store in Biddeford. At the time, defendant Diggins was driving defendant Leo's pick-up truck. As the truck sped into the 7-Eleven parking lot, Daimon McCollum was walking towards the store's entrance. McCollum, who is black, looked up at the speeding car, at which point defendant Diggins called out at him, "Who you eyeballin', Nigger?"

After the truck came to a stop in the parking lot, defendant Diggins got out of the vehicle, approached McCollum, and repeated the slur. Defendant Diggins then circled McCollum, blocking McCollum from the 7-Eleven entrance while also forcing McCollum to turn his back to the truck. Once McCollum's back was fully turned, defendant Leo got out of the truck, came up behind McCollum, and struck McCollum in the jaw. McCollum dropped to the ground, at which point both defendants approached him. McCollum eventually got to his feet and ran out of the parking lot. As he ran, the defendants got back in defendant Leo's truck, with defendant Diggins driving. Evidence presented at trial established that the truck then chased after McCollum while defendant Diggins continued to yell racial epithets at McCollum, including laughing and calling out words to the effect of, "We're going to find you, Nigger."

### iii. *Victim Injuries*

The vicious attacks on Akok Nyang and Daimon McCollum left each man badly injured and required each victim to undergo emergency trauma surgery. Dr. Richard Crawford, a facial orthopedic trauma surgeon, treated each man and testified at trial about their significant injuries.

As a result of the attack, Nyang suffered a broken jaw and one of his wisdom teeth was shattered. Two of his molars were also impacted by the strike and had to be removed during surgery. To fully repair Nyang's face, Dr. Crawford affixed six screws and a reconstructive plate to Nyang's jaw before wiring the jaw closed. Nyang's jaw remained wired shut for weeks following the surgery. During this time, he was unable to eat or work or care for his infant daughter. The reconstructive plate remains in Nyang's jaw to this day.

McCollum endured similar injuries. Like Nyang, McCollum suffered a broken jaw and had his jaw wired shut for several weeks following his emergency surgery. But McCollum's jaw was actually broken in two places, and McCollum also required stitches to close a corresponding gash to his lip. McCollum's incapacitation due to injury led him to lose the two jobs that he had been working prior to the attack, and McCollum's fear of living in the same town as the defendants led him to move. As a result, McCollum and his family faced a prolonged and difficult period of instability following the attack.

### b. Relevant Procedural History

The defendants were first indicted on August 23, 2018. The initial two-count indictment focused solely on the attack on McCollum and charged the duo with conspiring to commit a hate crime, in violation of 18 U.S.C. §§ 371 and 249. Doc. 3.

On March 1, 2019, a grand jury returned a Superseding Indictment which added an additional substantive hate crime charge for the attack on Akok Nyang. The Superseding

Indictment also added overt acts to the conspiracy charge, including one regarding the attack on Ryan Doran.  Doc. 58.  All told, the defendants faced three charges: two hate crime charges, and an overarching conspiracy charge alleging an agreement to commit hate crimes.

Defendant Diggins's trial began on March 6, 2020.  The jury convicted him of all three charges.[2]

In light of the COVID-19 pandemic, defendant Diggins moved to be sentenced via video conference.  Doc. 244.  The Court granted the motion, and his sentencing is currently scheduled for October 27, 2020, via video conference.  Doc. 248.

II.     **SENTENCING GUIDELINES CALCULATION & RESTITUTION**

The government agrees with the Probation Department's guideline calculations, which can be summarized as follows:

| §2H1.1(a)(1) → §2A2.2 | Base Offense Level → (Aggravated Assault)[3] | 14 |
|---|---|---|
| §2A2.2(b)(3) | Serious Bodily Injury[4] | +5 |
| §3A1.1(a) | Hate Crime Motivation | +3 |
|  | Grouping[5] | +2 |
|  | **Total Offense Level** | **24** |
|  | **Guideline Range** | **100-125 months** |

---

[2] A few days before trial, defendant Leo pled guilty to the conspiracy charge and the hate crime charge addressing the attack on McCollum.  With respect to defendant Leo, the government has agreed to dismiss at his sentencing the hate crime charge regarding the attack on Nyang (Count Two).

[3] Whether starting with the conspiracy charged in Count One, or each individual hate crime charged in Count Two and/or Count Three, the Guidelines eventually arrive at §2A2.2.  *See* §§2X1.1 and 2H1.1.

[4] The victims' injuries meet the definition of "serious bodily injury."  *See* §1B1.1, Application Note 1(L).

[5] The government agrees with the Probation Department that the charges relating to the hate crime on McCollum group together, and the charges relating to the hate crime on Nyang group together.  *See* §3D1.2(a).  Because each group has the same total offense level, each receives one unit, for a total number of two units.  *See* §3D1.4.

4

As the Probation Department notes, Maine's Victim Compensation program awarded McCollum a total of $13,307.48 and Nyang a total of $1,929.35 to support them in dealing with medical bills and lost wages following the attacks. *See* Doc. 234 at 9. These amounts should be accounted for in restitution.

### III.   GOVERNMENT'S SENTENCING RECOMMENDATION

The government recommends that the Court sentence defendant Diggins to a 120-month term of imprisonment. This sentence would be sufficient, but not greater than necessary, to comply with the purposes of sentencing as dictated by 18 U.S.C. § 3553(a).

Several factors support imposition of the recommended sentence. First and foremost, a jury convicted defendant Diggins of committing multiple acts of needless, racially motivated violence. *See* 18 U.S.C. § 3553(a)(1). For what appears to have been defendant Diggins's own amusement, three minority men who were doing nothing but minding their own business had their lives turned upside down by an unprovoked attack. Two of those men suffered significant injuries that required surgery to repair. Each man was left with scars that he will carry for the rest of his life. In addition to the physical pain and trauma, the victims must now live with the knowledge that they were targeted for violence because of their race. The lifelong psychological trauma accompanying that realization cannot be overstated.

Defendant Diggins's specific characteristics make these senseless acts of violence seem less surprising, and those specific characteristics therefore also underscore the need for the recommended sentence. *Id.* The Probation Department has outlined in detail defendant Diggins's voluminous criminal history. Some parts of that criminal history reflect his difficult life and battle with drug addiction. But that criminal history also reflects his penchant for violence. Of particular note is defendant Diggins's 2003 conviction for aggravated assault. As detailed by the Probation

Department, the victim of that attack was a Hispanic man who claims that his assailants yelled racial epithets at him while they beat him—much like defendant Diggins did when he attacked Nyang and McCollum. Yet even if one puts aside the allegations made by the victim of that 2003 assault, defendant Diggins's racial bias is still well-documented. In fact, the Court need look no further than defendant Diggins's own tattoos to recognize the depth of his white supremacist views. In sum, given defendant Diggins's history, it is not surprising that he acted in a brutal and hateful manner.

Defendant Diggins's criminal history also suggests that anything less than a significant term of imprisonment will fail to deter future criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(B). Defendant Diggins committed these hate crimes while he was on probation for prior state crimes. *See* Doc. 234 at 9. This fact begs the question of whether any sentence can adequately deter this particular defendant from engaging in criminal conduct in the future. That such a question even exists makes clear that the Court must fashion a sentence that will protect the public from further crimes by defendant Diggins. *See* 18 U.S.C. § 3553(a)(2)(C).

The nature of hate crimes as a general matter also supports the recommended sentence. *See* 18 U.S.C. § 3553(a)(2)(A). Defendant Diggins was convicted of twice violating (and of conspiring to violate) the Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act (HCPA). As Congress noted when passing the HCPA, hate crimes pose "a serious national problem." *See* Pub. L. No. 111-84, Div. E Stat. 2190, Sec. 4702 (2009). Such acts are "deeply divisive" as they "[disrupt] the tranquility and safety" of entire communities. *Id.* In particular, "[a] prominent characteristic of a violent crime motivated by bias is that it devastates not just the actual victim and the family and friends of the victim, but frequently savages the community sharing the traits that caused the victim to be selected." *Id.*

Defendant Diggins's actions give credence to the concerns that animated the HCPA's passage. By attacking black men because they are black, defendant Diggins not only harmed Nyang, McCollum, Doran, and their families; the attacks also instilled fear in racial minorities throughout the community. It is vital that the ultimate sentence in this case reflect the legal system's unequivocal disavowal of such acts. A sentence of 120 months would accomplish this purpose and thus help deter defendant Diggins and others from engaging in racist violence in the future.

## IV. CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence defendant Diggins to a term of imprisonment of 120 months.

Respectfully submitted,

| | |
|---|---|
| ERIC S. DREIBAND<br>ASSISTANT ATTORNEY GENERAL<br>CIVIL RIGHTS DIVISION | HALSEY B. FRANK<br>UNITED STATES ATTORNEY |
| By:  /s/ *Timothy Visser*<br>TIMOTHY VISSER<br>Trial Attorney<br>U.S. Department of Justice<br>Civil Rights Division, Criminal Section<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530<br>202-353-8175<br>timothy.visser@usdoj.gov | /s/ *Sheila W. Sawyer*<br>SHEILA W. SAWYER<br>Assistant United States Attorney<br>100 Middle Street<br>Portland, Maine 04101<br>207-780-3257<br>sheila.sawyer@usdoj.gov |

## CERTIFICATE OF SERVICE

October 20, 2020

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                  /s/ *Timothy Visser*
                                  Timothy Visser
                                  Trial Attorney
                                  U.S. Department of Justice