UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | )   No. 2:18-cr-122-NT |
| | ) |
| MAURICE DIGGINS | ) |

## DEFENSE SENTENCING MEMORANDUM

Maurice Diggins is scheduled for sentencing via video on October 27, 2020 at 10 am.

**PSR**

The revised PSR of 6/9/20 finds a total offense level 24, criminal history VI with an advisory Guideline range of 100 to 125 months. PSR ¶ 86. Supervised release is up to three years. PSR ¶ 91. There is mandatory restitution of $15,236.83. PSR ¶ 99. The sole outstanding Guideline issue is the required court findings regarding §3A1.1(a). PSR ¶ 38. (Discussed at the pre-sentence conference on 9/24/20). The PSR documents Maurice's exceedingly difficult childhood, struggle with addiction, depression and anxiety. PSR ¶¶74, 78-80. The final PSR does not mention the effects of COVID-19, the rampant spread of the virus through the federal prison system, the susceptibility of those like Maurice with Hepatitis C, asthma and breathing difficulties, and the limitations on programing the BOP has implemented as a way of combating the spread of COVID-19 within the prisons. These factors support a downward variance. We suggest a sentence to 84 months (7 years), the equivalent of a two level variance down.

1

**Maurice Diggins**

Maurice Diggins is 36 years old, married with one child, a daughter G.D. age 12. Maurice works as a dry wall installer for Elite Builders. PSR ¶ 84. He held that job for the two years before his August 24, 2018 federal arrest. He has been in custody for the past twenty six months. PSR ¶ 1. The year leading up to April 15, 2018 was one of the best in Maurice's difficult life. He had steady employment, stable housing, and a solid relationship with his wife and daughter. They enjoyed a variety of family activities, especial being outdoors together. His daughter participated in youth sports and Maurice was a regular fan. The family had a small boat and enjoyed time on local lakes. They socialized with other young families and with relatives. He paid off his old child support arrearage accrued while in state prison. PSR ¶ 75. Nothing in the immediate time leading up to April 15, 2018 foreshadowed the events of that late night and early morning. Looking farther back, Maurice's earlier life was difficult.

**Maurice's Youth**

Maurice's biological parents never married. PSR ¶ 73. He has five older half siblings and one younger half sibling. He is the only child of his parents brief relationship. Id. Four of the six are "active drug users." Id. He was raised by his mother and adoptive father. PSR ¶ 74. He has no contact with his biological father during his childhood. Id. His mother owned a bar and "worked a lot" leaving him and the younger siblings home alone frequently. Id. "[H]e was introduced to drugs, alcohol and crime at a young age, by his sister." Id. She

started him smoking marihuana at age seven and drinking alcohol by age ten. PSR ¶¶ 74, 79. Opiates began at age 14, first pills, "oxys" followed by heroin addiction at age 15 and cocaine at 16. PSR ¶ 79. "[D]uring his teenage years, drugs "took over [his] life." He stated he could not go to school because he was dope sick, which led him to drop out of school in the ninth grade in order to find ways to earn money to purchase drugs. PSR ¶ 74. Shortly after dropping out he was sent as a juvenile to Long Creek, his introduction to state incarceration. At 17 he was sent to jail for 30 days for theft. PSR ¶ 50. At 19 he became a felon and was sent to the Maine State Prison for three and a half years. PSR ¶¶ 48, 51-53. The sentences were for a combination of thefts, burglaries and drug possession, all related to his drug use. On one day, January 31, 2003, he was sentenced in four different cases, garnering 9 criminal history points due to "intervening arrests." PSR ¶52-55. Despite already serving three and a half years, Maurice was brought back to Cumberland Count court twice in 2004, adding concurrent time and another 3 history points. PSR ¶¶ 56, 57. At age 19 Maurice was a felon, was doing 3 ½ years in the state prison, and had 12 federal criminal history points despite the sentences all being concurrent with each other. He was too young to legally drink or vote. He had not finished high school, had no GED, and there is no record of him getting any substance abuse treatment or counseling. In 2014 at age 30, he finally earned his GED. ¶ 83.

**Mental Health and Substance Abuse**

Maurice has been diagnosed with depression, seasonal affective disorder, and severe anxiety.

PSR ¶ 78. His only treatment has been "in custody." There is no explanation for why when on state probation he did not have mental health services or if records were just not provided. While at the Maine State Prison between 2011 and 2013 Maurice was despondent and tried to kill himself "seven or eight times." PSR ¶ 78. He has Wellbutrin and Zoloft while in custody and both seem beneficial. At the Strafford jail he has been prescribed daily Wellbutrin which has made a big difference in his anxiety and depression. Id.

Maurice's addiction to heroin and cocain led to most of his state crimes. He stole to buy drugs. Hew was able to get himself clean for a period of time but would relapse. Suboxoine helped. In June of 2018, while on bail from the state charges (PSR ¶ 71), he attended and successfully completed the inpatient treatment program at St. Francis. PSR ¶ 81. This post offense treatment was helpful. The PSR quotes from some sections of his discharge but we do not have the full report. Noting his potential difficulty to maintain long term sobriety, the discharge must have recommended continued regular counseling and treatment.

**Those Who Know Maurice**

Maurice has a large circle of friends and family. He is described favorably by all of them. See Defense Exhibit 1. He is a great father. His daughter writes, "He has always been an amazing dad. He has loved me unconditionally even with the ups and downs." Id. Strikingly she writes, "No kid should go without a dad. I miss him so much and so does my

whole family." Id. Maurice went without a Dad. He lacked the stability of parents at home and knows that contributed to his own failures. Maurice's regret for what occurred on April 15, 2018 is matched only by the pain, shame and damage he has brought to his own daughter. His absence from her life when she so needs him can never be restored.

His mother in law, Robin, has known Maurice for over 20 years. Maurice was a regular fixture at family events. She reports, [t]hroughout those years, he always respected us, our home and out family values, never once did we have to worry. Exhibit 1. When her own brother died and her husband was in the hospital it was Maurice who supported her emotionally and "took it upon himself to cover my husband's home duties while he was gone." Id. Maurcie plays a positive role in the lives of friends and family. Shawn Berube relates that is was Maurice who assisted Shawn's return from addiction. Maurice got him a job, picked him up, drove him to work, took him to probation and drug court check in.

> Any time I did something that could jeopardize my freedom he would be all over me and very upset with me I had a son on the way and he didn't want me to go back to prison and miss out on my sons life like he had with his daughter. I had my son , 2017 and he was there right after he was born, I went on from that moment and I graduated drug court in December of 2018. The reason I tell you these things about myself is because he's a huge reason why I was able to be there for my sons birth and was able to graduate that program by being a good role model and being on top of me to do better and be better" Exhibit 1.

To sum up who he was to me I'd have to say he was like a father figure in a

5

>way since mine never really taught me right from wrong as Maurice, he wasn't perfect by any means but if I did something that would have a negative impact on my life he would be the first one to let me know what I was doing wasn't okay and to smarten up and make better choices. Today I run my own construction company have for the past three years, I am raising my son and really enjoying being a father it truly gave my life purpose, I'm trusted by all the people I love in my life and the only reason I tell you these things about myself is because I owe a lot of it to Maurice.

Exhibit 1, Letter of Shawn Berube.

Maurice's nephew relates how fun it was to spend time with Maurice, swimming all day at the lake, "heaving us into the air for hours," taking us for rides on his motorcycle and tubing on the boat. Letter of P.S. Exhibit 1. "He was always an idol to me as he would always put Aunt Tess, G , and our whole family before anything." Id.  His niece writes, "My Uncle, Maurice is one of the best men I have ever had in my life. And I know from your standpoint his record seems a little scary, but from our standpoint, we see a loving, caring, fun Uncle, Father, and Husband who cares deeply about everyone he surrounds himself with." Letter of C.S., Exhibit 1.  He never missed one of my softball games, played catch and helped me with my skills. Id.  Although he had a rough past, it was when he finally came home around GD's 7th birthday, that I really noticed a change in him. He was SO happy to be a father, like it was what he was meant to do. He loves his daughter so much, and really started doing better with himself." Id. She concludes, ""People learn, people change, people move on." Id.

Several of Maurce's friends of color have written the court. Marlaco Bethune has been friends for over 20 years and never has he shown her any racism. Exhibit 1. Louis Whitehand spent time in the Strafford County jail with Maurice. He writes how Maruice was his friend and they attended many program classes together, parenting, anger management and substance abuse. Through what Maurice shared in class, Louis saw a loving father and husband working hard to be the person he can be. He found the criminal case facts "disturbing" as he considers Maurice a friend. He notes Maurice was a good and helpful friend and has the capacity to "be the man God destine him to be." Exhibit 1. Reverend McIlwain has known Maurice since childhood. They grew up in the same housing project. [Kennedy Park]. He describes how Maurice has no guidance as a child and relates several incidents and how they affected him and Maurice. Reverend Jeff discusses racism and what he views as those full of hate and others, like Maurice who are manipulated by the hateful. He does not see that hate in Maurcie. "Maurice has something worth saving in him, the hurt and damage he has caused in his past, now has him on the edge of the cliff between justice and mercy, that I pray he doesn't falloff". Exhibit 1.

**Conclusion**

Maurice grew up a neglected child in subsidized housing with no father and a working mother. His siblings introduced him to drugs, alcohol and crime at a young age. The system did not help him. With addiction and theft came Long Creek and then prison. Yet Maurice has since shown he is able to rise above his lack of upbringing and his past. He was doing well

and the events of this case are a "relapse." When we look at the nature and circumstance of the offense and the offender we see bad in the conduct yet signs of good in Maurice. Too long of a sentence fails us all. Ten years is too long. Maurice and society both need Maurice to recover, to get treatment, and to rebuild his life. He needs to be there as a father and a husband. A sentence of seven years may have Maurice out of prison by the time of his daughter's high school graduation. He will have missed the balance of her childhood and her adolescence. She needs a father as she approaches adulthood. His wife needs a husband. Maurice needs the knowledge that this court while imposing punishment, is also encouraging him to abandon whatever past demons haunt him and to be the great father, husband, friend, employee, and family member described by those who have written the court. He needs to return to work, address the restitution, participate in the programing probation will oversee as conditions of his supervised release. A sentence of 84 months is the equivalent of a 2 level downward variance. A variance supported by Maurice's lack of upbringing, his untreated mental health and his addiction. It is supported by the hard time COVID-19 is causing for those incarcerated and for the limitations placed on prison life as a result.  The modest variance sought sends a message of the need for change to Maurice while respecting and punishing the misconduct of his conviction. We suggest a sentence of 84 months followed by 3 years of supervised release with the special conditions recommended by probation in the PSR and  restitution as listed in the PSR.

Date:  October 20, 2020                /s/ *David Beneman*
                                       David Beneman, attorney for Maurice Diggins

David Beneman
Federal Defender
P.O. Box 595
Portland, Me 0412-0595
207-553-7070 ext. 101
David_Beneman@fd.org

## CERTIFICATE OF SERVICE

I, **David Beneman**, attorney for **Maurice Diggins**, hereby certify that I have served, electronically, a copy of the within **"Defense Response to Draft PSR"** upon **Sheila Sawyer and Timothy Visser**, AUSA, via the ECF system.

DATE: October 20, 2020                 /s/ *David Beneman*
                                       David Beneman

CC: Maurice Diggins

9